IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID EARL JAY,<br><br>    Plaintiff,<br>v.<br><br>BAYVIEW LOAN SERVICING, LLC, &<br>MANUFACTURERS & TRADERS TRUST CO.<br>d/b/a M&T MORTGAGE,<br><br>    Defendants. | **JURY DEMAND**<br><br>Case No. _____ |

## COMPLAINT

Comes now the Plaintiff, David Earl Jay, through counsel undersigned, hereby makes the following Complaint for damages under various consumer statutes against the Defendants, Bayview Loan Servicing, LLC, and Manufacturers and Traders Trust Company:

### PARTIES, JURISDICTION & VENUE

1) Plaintiff, David Early Jay, is a citizen of the State of Tennessee and resides in the Middle District of Tennessee.

2) Upon information and belief, Defendant Bayview Loan Servicing, LLC ("Bayview") is a corporation organized under the laws of the State of Deleware. Its registered agent for service of process in Tennessee is: Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312.

3) Upon information and belief, Defendant Manufacturers and Traders Trust Company d/b/a M&T Mortgage, or M&T Bank, ("M&T") is a corporation organized under the laws of

the State of New York. Its registered agent for service of process in Tennessee is: Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312.

4) This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this is a civil action under laws of the United States: 15 U.S.C. §§ 1692-1692p, 15 U.S.C. § 1681, *et seq,* and 12 U.S.C. § 2605.

5) Venue is proper because this Court encompasses the counties where the subject debt in real property was created and the interest was recorded.

## FACTS

6) This Complaint arises out of Defendants' various violations of federal and state consumer statutes through the servicing of Plaintiff's first mortgage account ("the Mortgage") on the subject property located at: 2707 Hartford Drive, Nashville, TN 37210. The mortgage loan and security interest ("the Mortgage") were originated on July 23, 1997.

7) The Mortgage is a consumer debt, and the Plaintiff is an individual consumer.

8) On or around November 2013, the Plaintiff sent the then-servicer of the mortgage loan account, Chase Bank, a complete loss mitigation application for the purpose of obtaining a loan modification.

9) On January 23, 2014, Chase Bank sent Plaintiff a Freddie Mac modification offer (Exhibit 1) that was contingent on Plaintiff completing a trial period plan, under which Plaintiff was required to make monthly payments of $574.32 for three (3) consecutive months with payments due on 3/1/14, 4/1/14, and 5/1/14.

10) On or around February 15, 2014, the then-servicer, Chase Bank, transferred the servicing rights to Defendants, M&T and Bayview.

11) On February 20, 2014, Plaintiff mailed Defendant M&T his first payment (Exhibit 2) under the Freddie Mac modification offer and trial period plan.

12) After the transfer of servicing rights took place, the Defendants apparently lost all record of the modification offer and failed to honor the agreement in violation of the Real Estate Settlement and Procedures Act, or Regulation X.

13) Since that time, the Plaintiff has been receiving correspondence from both Defendants: statements from M&T and other correspondence from Bayview.

14) Upon information and belief, Bayview is the "sub-servicer" for M&T.

15) In May 2014, Defendant M&T sent Plaintiff a modification agreement (Exhibit 3) that proposed to lower Plaintiff's monthly payments of principal and interest. However, the modification offer proposed to extend the loan term from a maturity date of 2027 to a new maturity date of 2054. This offer was unacceptable to the Plaintiff and amounted to Defendant attempting to avail itself of the Plaintiff's desperation caused by a comparatively small delinquency.

16) Plaintiff rejected the modification offer that would more than double the maturity date of the loan and requested to be considered for a reasonable modification.

17) In response, the Defendants failed to inform Plaintiff of his right to appeal the modification offer and put the Plaintiff on the fast track to foreclosure – even while the Defendant sat on monthly payments made by the Plaintiff that had not been applied to the account.

18) On October 6, 2014, the Plaintiff was forced to cancel two outstanding checks to the Defendants that went unapplied to his account: check no. 1016 and no. 1023. These checks were mailed to Defendants on May 29, 2014 and July 11, 2014 respectively.

However, the Defendants held the checks without applying them on the account for four months. This cost the Plaintiff bank fees for cancelling the un-deposited checks.

19) In contrast to the Defendants' failure to promptly apply the payments for checks listed in Paragraph #18, the Defendants deposited Plaintiff's monthly payments for the subsequent two months. Check No. 1027 (dated 7/29/14) was deposited by Defendants on or around 8/14/14; and Check No. 1032 (dated 9/3/14) was deposited by Defendants on 9/15/14. However, in violation of the Truth in Lending Act, the depositing of Check No. 1032 to Plaintiff's account was not listed in the transaction activity for the September monthly statement dated 9/16/14 (Exhibit 4). Plaintiff does not know if the payment was even applied to his account because the payment is also not listed in the transaction history for the subsequent monthly statement for October (Exhibit 5).

20) On October 14, 2014, the Plaintiff received a letter and returned check (Exhibit 6) from Defendant M&T, which informed him that the account was being prepared for foreclosure. The Plaintiff had mailed this check on October 4, 2014 for the full amount of his monthly payment.

21) On October 5 and October 18, 2014, the Defendants sent an agent by the Plaintiff's home to take pictures for the purpose of foreclosure proceedings.

22) In contrast to their initiation of foreclosure proceedings, the Defendants sent Plaintiff a letter dated October 11, 2014 (Exhibit 7) (received October 15, 2014) informing him that he had been denied for a modification because: "You did not provide the requested documentation by the deadline" (which the servicer highlighted for him). The correspondence also provided information about short sales and deeds-in-lieu.

4

Case 3:14-cv-02277   Document 1   Filed 11/19/14   Page 4 of 14 PageID #: 4

23) Plaintiff had never received correspondence from either Defendant that his loss mitigation application was incomplete as required by federal law (RESPA described infra).

24) Attempting to avoid litigation, the Plaintiff attempted to resolve the situation with the Defendants by contacting (without success) numerous state and federal agencies: the Consumer Financial Protection Bureau, Keep My Tennessee Home, Office of the TN Attorney General, and Senator Bob Corker's office.

## CAUSES OF ACTION

### I. Fair Debt Collection Practices Act Claim – 15 U.S.C. §§ 1692-1692p

25) Plaintiff hereby incorporates all of the allegations contained in the prior paragraphs of this Complaint, as if fully stated herein.

26) Plaintiff would show that he is a "consumer" as defined under 15 U.S.C. § 1692a(3)

27) Plaintiff would show that Defendants are each a "debt collector" as defined under 15 U.S.C. § 1692a(6). When the Defendants began servicing the Plaintiff's loan in February 2014, the account was delinquent. (Exhibit 8 – Notice of Transfer and Delinquency Notice).

28) Plaintiff would show that the debt in question in this matter is a consumer "debt" as defined under 15 U.S.C. § 1692a(5).

29) In March of 2014, the Plaintiff told employees of Defendants by phone to cease contacting him on his cell phone. However, the calls continued.

30) On March 24, 2014, the Plaintiff provided explicit written notice (Exhibit 9) to Defendant M & T to cease contacting him on his cell phone once again – requesting all communication in writing.

31) On April 14, 2014, the Defendant M&T acknowledged receipt (Exhibit 10) of Plaintiff's request to cease contacting him on his cell phone.

32) Additionally, the Plaintiff even reiterated his written notice to cease cell phone communication in another subsequent written notice (Exhibit 11). However, the Defendants have continued to call Plaintiff's cell phone since March 24, 2014 through the date of filing this Complaint.

33) Plaintiff would show that Defendants violated 15 U.S.C. § 1692c(c) by continuing to call the Plaintiff on his cell phone after receiving written instructions to cease communications on his cell phone.

34) Because the Defendants failed to cease phone call communications after receiving several written notices, the Defendants violated 15 U.S.C. § 1692d because their continued telephone calls – the natural consequence of which was to harass, oppress, or abuse the Plaintiff in collection of the subject debt.

35) As a result of Defendant's violations, Plaintiff has suffered damages including but not limited to: lost at work from cell phone calls, mental anguish, cell phone minutes, and additional postage costs. Additionally, Plaintiff is entitled to statutory damages in the amount of $1,000.00 together with reasonable attorney's fees and the cost of this action under 15 U.S.C. § 1692k(a).

36) Plaintiff would show that Defendant's non-compliance with 15 U.S.C. § 1692 was frequent, persistent, willful and intentional.

**II.** **Truth in Lending Act – 12 C.F.R. § 1026**

Many of the following citations herein from Title 12 of the Code of Federal Regulations were amendments to "Regulation Z" (the Truth in Lending Act) that became effective on January 10, 2014 and are privately enforceable through 15 U.S.C. § 1640.

37) Plaintiff hereby incorporates all of the allegations contained in the prior paragraphs of this Complaint, as if fully stated herein.

38) Plaintiff is a "consumer" within the meaning of 12 CFR § 1026.2(a)(11). The subject mortgage loan described herein is "consumer credit" incurred by Plaintiff for personal, family or household use and secured by real property or the Plaintiff's principal dwelling under 12 CFR § 1026.2(a)(12). Therefore, Regulation Z (Truth in Lending Act) applies to the subject mortgage.

39) Regulation Z (12 C.F.R. §1026.36(c)) requires a mortgage servicer to promptly credit payments the day they are received, unless the payment is insufficient to cover a full monthly payment.

40) On May 29, 2014 and July 11, 2014, the Plaintiff wrote check no. 1016 and check no. 1023 – both for $801.61 (the fully monthly payment amount) and mailed them to the proper mailing address as indicated on his monthly statements. On October 6, 2014, the Defendants had still not deposited these checks or otherwise applied them to the Plaintiff's Mortgage account. As a result, the Plaintiff cancelled both checks on October 6, 2014 and was forced to pay cancellation fees by his bank. Proof of cancellation of check no. 1016 and check no. 1023 is attached as <u>Exhibit 12</u> – collectively.

41) The periodic statement requirement under 12 C.F.R. §1024.41 requires the Defendants to show recent transactions on the account. In violation of this section, the monthly

statements for June and July (Exhibit 13– collectively) did not show either of the checks described in Paragraph #40 received during those time periods.

42) Additionally, on or around 9/3/14, Plaintiff sent a full monthly payment in check no. 1032 (Exhibit 14) that was deposited by Defendants on or around 9/15/14. The deposit and application of Check No. 1032 to Plaintiff's account was not listed in the transaction activity for the September monthly statement dated 9/16/14 (Exhibit 4). Plaintiff does not know if the payment was even applied to his account because the payment is also not listed in the transaction history for the subsequent monthly statement for October (Exhibit 5).

43) Therefore, the Defendants violated 12 C.F.R. §1026.36(c) and 12 C.F.R. §1024.41 by failing to promptly apply Check No. 1032 for the full monthly payment amount to Plaintiff's account and by failing to show how it was applied in the transaction activity of the periodic statements required by federal statute.

44) Plaintiff asserts that the foregoing violations of the TILA were willful and knowing, and voluntary and apparent on the face of the disclosures under 15 U.S.C. § 1641(e).

45) Due to Defendant BNYM's foregoing willful violations of the TILA (Regulation Z), Plaintiffs are entitled to actual damages including but not limited to: cancelled check fees, lost payments of check no. 1032, late fees charged by the Defendants, attorney's fees and costs out-of-pocket; statutory damages of $4,000.00, and the costs of the resulting legal action, and reasonable attorney's fees – pursuant to 15 U.S.C. § 1640.

### III. Foreclosure-Related Rescue Services – T.C.A. §47-18-5402

46) Plaintiff hereby incorporates all of the allegations contained in the prior paragraphs of this Complaint, as if fully stated herein.

47) Violations of Tennessee Code Annotated §47-18-5402, provisions covering Foreclosure-Related Rescue Services, are privately enforceable under the Tennessee Consumer Protection Act, T.C.A. § 47-18-104(b)(44).

48) The Plaintiff is a "consumer," and the Defendants are both a "person" engaged in business within the meaning of T.C.A. § 47-18-103. Transactions on the mortgage loan account are consumer transactions and have been at all times stated herein.

49) The Plaintiff is a "homeowner" as defined under T.C.A. § 47-18-5401(4), and Defendants are both a "foreclosure-rescue consultant" as defined under T.C.A. § 47-18-5401(2) – meeting no exceptions provided therein. The Plaintiff's home is "residential real property" as defined under T.C.A. § 47-18-5401(5).

50) Upon information and belief, the Defendants charged Plaintiff's loan account for "loss mitigation services," which refers to processing applications of homeowners facing foreclosure and/or default to be considered for loan modification, short sale, and/or deed in lieu. The "loss mitigation" charges appeared on a monthly statement (Exhibit 15) and have been subsequently itemized on subsequent monthly statements as a "recoverable corporate advance."

51) Upon information and belief, these "loss mitigation" charges were for "foreclosure-related rescue services" as defined under T.C.A. § 47-18-5401(1).

52) Upon information and belief, these "loss mitigation" charges/fees are still being collected by Defendants.

53) In July 2014, the Defendants initiated foreclosure proceedings against the Plaintiff's home.

54) Accordingly, the Defendants have violated T.C.A. § 47-18-5402(a)(2), 5402(d), and 5402(f) by charging the Mortgage account fees for foreclosure-related rescue services without first executing a written agreement with the language provided in the statute and failing to provide a copy of the signed agreement to the Plaintiff.

55) As a result of the foregoing willful and knowing violations by Defendants, the Plaintiff has suffered actual damages in the form of bank fees, time lost from work, mental anguish, attorney's fees, and costs of this action. In addition to actual damages, Plaintiff seeks attorney's fees, costs, and treble or punitive damages for this action awardable under T.C.A. § 47-18-109.

## IV. Real Estate Settlement & Procedures Act Claim – 12 U.S.C. § 2605

Many of the following citations herein from Title 12 of the Code of Federal Regulations were amendments to "Regulation X" (the Real Estate Settlement and Procedures Act) that became effective on January 10, 2014 and are privately enforceable through 12 U.S.C. § 2605.

### 1. Requests for Information & Notices of Error

56) Plaintiff hereby incorporates all of the allegations contained in the prior paragraphs of this Complaint, as if fully stated herein.

57) Defendants are mortgage servicers under the RESPA, and this action involves Defendants' servicing of the Plaintiff's "federally related mortgage loan."

58) At all times relevant hereto, Defendants were the servicers of Plaintiff's federally related mortgage loan.

59) In 2014, the Plaintiff sent several letters to the Defendants (Exhibit 16- collectively, also includes a list of communications sent) that qualified as "Requests for Information" ("RFI") pursuant to 12 C.F.R. § 1024.36 and "Notices of Error" ("NOE") under 12

10
Case 3:14-cv-02277   Document 1   Filed 11/19/14   Page 10 of 14 PageID #: 10

C.F.R. § 1024.35. A failure to respond to even one of these notices creates a cause of action that is privately enforceable under 12 U.S.C. § 2605(e).

60) The Defendants failed to respond to these letters with written acknowledgement within five (5) business days as required under 12 C.F.R. § 1024.35(d) and 1024.36(c) or sufficiently correct/respond within thirty (30) business days under Sections 1024.35(e) and 1024.36(d).

61) The information requested and errors described in Plaintiff's foregoing requests and notices are explicitly part of the Consumer Financial Protection Bureau's Scope of Error Resolution provided under 12 C.F.R. § 1024.35(b).

62) As a result of the foregoing violations of the RESPA 12 U.S.C. §2605(e), Plaintiffs have suffered actual damages including, but not limited to: attorney's fees, costs and expenses in bringing this matter, time away from work, and mental anguish. Additionally, Plaintiffs should be awarded attorney's fees and costs incurred in bringing the action under 12 U.S.C. § 2605(f)(3), plus statutory damages in the amount of $2,000.00 per violation because the foregoing violations constitute a pattern or practice of non-compliance under 12 U.S.C. § 2605(f)(1)(B).

### 2. Servicing Transfer Procedure Violations – 12 C.F.R. § 1024.38

63) Plaintiff hereby incorporates all of the allegations contained in the prior paragraphs of this Complaint, as if fully stated herein.

64) When the servicing rights of Plaintiff's loan were transferred from Chase to the Defendants in February 2014 (*see* Exhibit 8), Plaintiff had been offered a Freddie Mac modification (*See* Exhibit 1) that would start with trial period payments.

65) On February 20, 2014, Plaintiff sent the first trial period payment (*See* Exhibit 2) to Defendant M&T, which refused to recognize the Freddie Mac modification offer and trial plan. The Defendants treated these payments as nothing more than partial payments.

66) Under 12 C.F.R. § 1024.38, the Defendants are required to maintain policies and procedures to facilitate transfer of information during servicing transfers. Once the servicing is transferred, the Defendants (or transferees) violated 12 C.F.R. § 1024.38(b)(4)(ii) by failing to identify and obtain necessary documents and information that may not have been transferred.

67) Accordingly, the Defendants' failure to honor the Freddie Mac modification by rejecting trial period payments, failure to seek and obtain those documents and information from Chase (the previous servicer), and failure to investigate Plaintiff's inquires regarding the same constitute a violation of Regulation X described in Paragraph #66.

68) As a result of the foregoing violations of Regulation X, Plaintiff has suffered actual damages including, but not limited to: time lost from work, late fees, foreclosure fees, attorney's fees, costs and expenses in bringing this matter, and mental anguish. Additionally, Plaintiff should be awarded attorney's fees and costs incurred in bringing the action under 12 U.S.C. § 2605(f)(3), plus statutory damages in the amount of $2,000.00 per violation because the foregoing violations constitute a pattern or practice of non-compliance under 12 U.S.C. § 2605(f)(1)(B).

### 3. Loss Mitigation Procedures – 12 C.F.R. § 1024.41

69) Plaintiff hereby incorporates all of the allegations contained in the prior paragraphs of this Complaint, as if fully stated herein.

70) Under 12 CFR § 1024.41(b)(1), Defendants were required to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application. The Defendants failed to exercise said reasonable diligence with respect to Plaintiff's loss mitigation application.

71) Since the complete application was received 45 days or more before a foreclosure sale, 12 C.F.R. § 1024.41(b)(2) requires the Defendants to inform the Plaintiff within 5 business days of receipt of the application about whether it was complete.

72) The Defendants did not make a decision on the loss mitigation application until May 2014.

73) Additionally, Defendants have initiated foreclosure proceedings on Plaintiff's home in violation of 12 C.F.R. § 1024.41(f).

74) Lastly, the Defendants have violated 12 C.F.R. § 1024.41(h) by failing to consider Plaintiff for an appeal of the decision on his loss mitigation application and by failing to provide notice to Plaintiff of his right to appeal the offer of modification provided.

75) As a result of the foregoing violations of Regulation X, Plaintiff has suffered actual damages including, but not limited to: time lost from work, late fees, foreclosure fees, attorney's fees, costs and expenses in bringing this matter, and mental anguish. Additionally, Plaintiff should be awarded attorney's fees and costs incurred in bringing the action under 12 U.S.C. § 2605(f)(3), plus statutory damages in the amount of $2,000.00 per violation because the foregoing violations constitute a pattern or practice of non-compliance under 12 U.S.C. § 2605(f)(1)(B).

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

1. That Defendants be served with this Complaint and be required to answer the allegations hereof;

2. For actual and/or statutory damages caused by Defendants' willful and negligent violations of the FDCPA, the TILA, the RESPA, and the Tennessee Consumer Protection Act (as previously described herein);

3. For treble damages under the Tennessee Consumer Protection Act;

4. For reimbursement of court costs and attorney fees as provided under 15 U.S.C. § 1692k(a), 12 U.S.C. § 2605(f)(3), 15 U.S.C. § 1640, and T.C.A. § 47-18-109; and

5. For such other and further relief as the Court deems appropriate.


Respectfully submitted,


/s/ Charles W. Faquin
Charles W. Faquin, #028009
Law Office of Charles W. Faquin, PLC
625 Main Street, Suite B-1
Nashville, TN 37206
(615) 678-1035
(615) 679-4035 – Fax
charles@faquin-law.com
*Attorney for Plaintiff*